UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Katch, LLC, f/k/a Vantage Media, LLC, | Case No.: 15-CV-03760 (SRN/JSM) |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| Jeff Sweetser, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Katch, LLC ("Katch") submits this Memorandum of Law in opposition to Defendant Jeff Sweetser's ("Sweetser" or "Defendant") Motion to Dismiss. Katch's Complaint contains a more-than-sufficient legal and factual explanation of its claims and this Court should therefore deny Defendant's motion to dismiss. Katch notes that it received the Court's Memorandum Opinion and Order [Doc 33] regarding its Motion for Preliminary Injunction on November 10, 2015, which is also the deadline for Plaintiff to file this Memorandum. In light of the Court's Order, Katch will need to determine its next course of action in this litigation as a practical matter. Regardless, however, Katch asserts that its Complaint, in its current form, states a valid cause of action and meets the requirements of Rule 12 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS AS TAKEN FROM THE COMPLAINT

Katch is an online advertising company that enables advertisers to place ads on websites owned by third parties, or, "publishers." Verified Complaint ("Compl.") ¶ 2, 9.

Katch's advertisers include life insurance and health insurance companies. Their goal is to find individuals to apply for and purchase insurance policies. *Id.*, ¶ 9. Katch acts as an intermediary between publishers and advertisers by connecting advertisers with potentially interested consumers who are visiting publisher websites. *Id.*, ¶ 8. Katch provides its services through an online advertising software platform ("Platform") that allows advertisers and publishers to make bids, monitor outcomes, and track other analytics. *Id.*, ¶ 7.

Defendant started working for Katch on or about August 13, 2012. *Id.*, ¶ 30. His job required him to use his intimate knowledge of Katch's confidential information to run the publisher side of the health insurance vertical for Katch. *Id.*, ¶ 31. As an express condition of his employment with Katch, Defendant executed an Employee Proprietary Information and Inventions Agreement ("Agreement") with Katch which included a covenant not to use or disclose confidential information. A copy of the Agreement is attached to the Verified Complaint as Exhibit 1.

On or about September 14, 2015, Defendant informed Katch that he intended to resign his employment with Katch as of September 25, 2015 and that he had accepted a job offer with MediaAlpha, LLC ("MediaAlpha"). MediaAlpha is Katch's primary competitor in online advertising within the health insurance vertical. *Id.*, ¶ 35. In this role, Defendant would be performing the same duties he performed at Katch, i.e. working to secure business from the same advertisers and publishers, except he would be doing so at Katch's expense. *Id.*

The timing and the terms of Defendant's job offer show that MediaAlpha intends to use Defendant's knowledge of trade secret information. The annual enrollment period started on October 15, 2015 for health insurance under Medicare and on November 1, 2015 for insurance under the Affordable Care Act. *Id.* ¶ 9. This is the most important time of year for the health care insurance vertical, and the timing is extremely critical. *Id.*

## ARGUMENT

**I.   Legal Standard.**

Rule 12 of the Federal Rules of Civil Procedure provides a procedure for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994); *Ossman v. Diana Corp.*, 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. *Ossman*, 825 F. Supp. at 880.

A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that it plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads factual content that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a "probability requirement," but asks for "more than a sheer possibility" that a defendant acted unlawfully. *Id.*

When the plaintiff presents well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation in isolation is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Defendant, in his memorandum, including twice in the opening paragraph, repeatedly decries what he claims is a "lack of evidence" to support his motion to dismiss. Def.'s Memorandum of Law at pp. 1, 3, 6. But Rule 12 tests the sufficiency of allegations, not evidence. "[P]laintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their complaint a plausible claim." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014). Here, the allegations are sound, and the evidence will follow.

**II.     Katch has Sufficiently Alleged the Existence of a Trade Secret.**

Pursuant to the Minnesota Uniform Trade Secrets Act ("MUTSA"):

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

4

> The existence of a trade secret is not negated merely because an employee or other person has acquired the trade secret without express or specific notice that it is a trade secret if, under all the circumstances, the employee or other person knows or has reason to know that the owner intends or expects the secrecy of the type of information comprising the trade secret to be maintained.

Minn. Stat. § 325C.01, Subd. 5.

In its detailed, 16-page Verified Complaint and supporting declarations, Katch alleges that Katch's margin information, in particular the amount it pays its top publishers combined with identity of its top publishers, is a trade secret. Specifically, Katch alleges, in part, as follows:

> 18. Katch charges the advertiser more per click than it pays the publisher. The difference is the "Margin." The larger the Margin, the more revenue Katch earns.
>
> 19. The Margin is more than the difference between (a) what the advertiser is willing to pay, based on the value created by Katch's Platform, and (b) what the publisher is willing to accept to display advertisements delivered from Katch's platform. It also reflects the "valued added" by Katch. Katch's Platform provides a means to efficiently match advertisers and publishers in a way they could not accomplish themselves.
>
> 20. The Margin is the result of a dual bidding process in which Katch utilizes compiled confidential data regarding:
> (A) **How much Katch has offered in the past for the opportunity to display advertisements on a publisher's website**;
> (B) What bid amounts have been successful or unsuccessful in the past for particular types of consumers on a publisher website;
> (C) What special incentive bonuses or "Publisher Loyalty Programs" Katch has offered certain publishers;
> (D) How well certain publishers have performed for Katch's advertisers;
> (E) **Who the preferred, Quality Publishers are, based on the value delivered to advertisers and Katch**;
> (F) Which publishers have the capacity to handle a certain volume of ads;

      (G)    Which publishers are particularly vulnerable to price competition;

      (H)    What the advertisers are willing and have been willing to pay based on the conversion rate of consumers originating from a publisher ("Conversion Data");

      (I)    Other criteria required or requested by advertisers; and

      (J)    Katch's fixed costs, bottom line and room to negotiate.

21. The confidential information described above and used by Katch to establish, maintain, and maximize its Margin is collectively referred to herein as "Margin Information."

22. Over time, Katch can charge certain advertisers a higher amount when their advertisements are displayed on higher quality publisher websites (those that deliver more consumers who turn into new insurance customers for the advertiser), because the advertisers can be confident they will get a higher rate of applications, or engagements, per click. Advertisers do not generally know who the best publishers are, and, beyond what Katch may communicate, the publishers do not generally know how well they are actually performing for advertisers.

23. Competing online advertising services, networks, and platforms do not know or have access to Katch's Margin Information, including its Conversion Data.

24. Online advertisers are not typically limited to a single online advertising service, network, or platform. They will work with any network that can provide them with a better return on investment for their online advertising dollars.

25. Although Katch works with over 100 online publishers, a much smaller sub-group of publishers accounts for a significant portion of its business in the health insurance industry sector. (Industry sectors are referred to as "verticals" by Katch.) The identity of these key publishers is confidential.

26. Katch's Margin Information is used continuously by Katch, but it changes slowly over time. The most current Margin Information, if misappropriated by a competitor, can be instantly monetized, just as a competitor with information about a confidential bid in an auction for a contract can use the information to under bid by one penny and obtain the contract. Margin Information which is two to three months old still has significant value and would allow a competitor to unfairly steal business.

6

After approximately six months, small changes in the marketplace would accumulate such that the information would lose much, but not all, of its value, although it would never reduce to zero value.

27. In order to compete fairly in the industry, a competitor would need to raise its offer made to a publisher (sometimes overpaying or even pricing such that it has zero margin) until it wins sufficient business volume, and then gather and collect information about the publisher's performance vis-a-vis certain advertisers. (A competitor cannot simply ask a publisher what it is being paid by another platform, because the publisher has an incentive to inflate what it claims it is being paid by other companies.) This process costs money and takes a significant amount of time. And, it would still not result in the competitor having the same information as Katch's Margin Information. Rather, it would have its own, different information. If a competitor were in possession of Katch's current Margin Information it would be starting at the finish line of this process.

28. Katch has expended millions of dollars and significant time and energy compiling its Margin Information.

**29. Katch has undertaken consistent efforts to maintain the secrecy of its Margin Information, including but not limited to requiring Defendant and other employees to sign confidentiality agreements.**

Compl., ¶¶ 18-29 (emphasis added). Katch further alleges:

47. Katch's Margin Information is a trade secret under the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01, Subd. 5.

**48. Katch's Margin Information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.**

49. Open enrollment under the Affordable Care Act starts on November 1, 2015 for coverage in 2016. This is an especially busy and critical time for the health insurance vertical, which was Defendant's responsibility while at Katch. Defendant possesses specific knowledge regarding Katch's Margin Information as it relates to the health insurance vertical.

7

> **50.     If Defendant is allowed to work for MediaAlpha, MediaAlpha will be able to use Katch's Margin Information to immediately divert business and revenue from Katch. The amount of revenue that Katch would lose would be impossible to measure with specificity, but is potentially in the range of millions of dollars of lost profits, and significantly more than that in lost revenue.**
>
> **51.     Katch has undertaken reasonable steps to maintain the secrecy of its Margin Information.**
>
> **52.     Katch requires its employees to sign non-disclosure agreements in the form attached hereto as Exhibit 1.**
>
> **53.     Katch also employs firewalls on its computer systems, requires passwords and encryption for access to systems, and utilizes badges and locks at its physical premises.**

*Id.* at ¶¶ 47-53 (emphasis added).

Katch, in its Verified Complaint, has set forth more than sufficient facts to allege the existence of a trade secret in the form of information that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and which is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Courts in the District of Minnesota have denied motions to dismiss in trade secret matters where the information claimed to be trade secrets is "at least reasonably defined." *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1042 (D. Minn. 2013).

Defendant's arguments are more appropriately raised in an opposition to preliminary injunction, or summary judgment motion. A different standard applies to a motion to dismiss, however. Even if the description of a trade secret lacks the precision

necessary for the entry of an injunction, it may be sufficient to satisfy the pleading requirement of a "short plain statement of the claim showing that the pleader is entitled to relief." *Superior Edge, Inc.*, 964 F. Supp. 2d at 1042 (citing Fed. R. Civ. P. 8(a)). Further, even where the complaint does not precisely describe "every reason" certain information is a trade secret, "the exact nature of the trade secret is a matter for discovery." *Id.* A plaintiff's ability to articulate the nature of its trade secret in a public complaint is inherently limited by the secrecy of the information and often the urgency of the litigation. To the extent Defendant finds the description provided in Katch's Complaint, and supporting and supplemental declarations on file with the Court (See Supplemental Declaration of Patrick Cross, DOC 18) lacking or unsatisfactory, Defendant's remedy is to seek a more definite statement or engage in discovery.

As the Court explained in *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003):

> While Defendants bring this Motion under Rule 12(b)(6), their arguments do not go to whether Montevideo's trade secret claim is recognized by law, as required under Rule 12(b)(6), but rather whether Montevideo states its claim with sufficient detail, as required by Rule 8. The proper motion in such a case is not a motion to dismiss under Rule 12(b)(6), but a motion for a more definite statement under Rule 12(e). While Defendants have not filed a 12(e) motion, Montevideo's Amended Complaint complies with Rule 8 by notifying Defendants of Montevideo's trade secret claim and the grounds upon which it rests. Rule 8 does not require the specificity Defendants seek. The exact nature of the trade secret is a matter for discovery. Accordingly, the Court will deny Defendants' Motion with respect this claim.

*Id.* (citations omitted).

### III. Katch has Sufficiently Alleged a Claim of Threatened Misappropriation of Trade Secrets.

The MUTSA explicitly authorizes a claim of threatened misappropriation: **"Actual or threatened misappropriation may be enjoined."** Minn. Stat. § 325C.02(a) (emphasis added). Because the statute differentiates "threatened" from "actual" misappropriation, an allegation of actual misappropriation is not required under the law. Katch filed its Verified Complaint the day after Defendant started his job with MediaAlpha to prevent misappropriation and logically could not have, at that time, alleged actual misappropriation. If injunctive relief is not afforded, Katch has the option to amend its complaint, either by right or by motion, to allege an actual misappropriation and to seek monetary damages.

In its Verified Complaint, Katch alleges, inter alia:

>   54. Defendant knows, or has reason to know, that Katch's Margin Information is a trade secret.
>
>   55. Defendant acquired knowledge of the Margin Information under circumstances giving rise to his duty to maintain its secrecy.
>
>   **56. Defendant's stated intention to work for MediaAlpha, a direct competitor, performing the same duties he performed at Katch, will necessarily and inevitably cause him to disclose trade secrets in the form of Katch's Margin Information.**
>
>   **57. Defendant's stated intention to work for MediaAlpha constitutes an actual or threatened misappropriation of Katch's trade secrets.**

Compl., ¶¶ 54-57 (emphasis added).

Katch has alleged all of the elements of a claim for threatened misappropriation under the MUTSA, supported by detailed factual allegations and a highly plausible

10

theory. Plaintiff does not have a duty to prove every element at this stage. *Scientia Energy, Inc. v. Vinco, Inc.*, No. 11-CV-554, 2011 U.S. Dist. LEXIS 81770, at *13-14 (D. Minn. July 5, 2011).

In *Rehabilitation Specialists, Inc. v. Koering*, 404 N.W.2d 301 (Minn. Ct. App. 1987), the Minnesota Court of Appeals reversed dismissal of a trade secrets claim under the more rigorous standard for summary judgment established by Rule 56 of the Minnesota Rules of Civil Procedure and its federal counterpart. In that case, the Court noted that the appellant:

> Argue[d] there was no "misappropriation" of confidential information because there is no evidence that she actually "used or disclosed" any of the items she took. The trade secrets act, however, defines "misappropriation" as the "*acquisition* of a trade secret of another by a person who knows * * * the trade secret was acquired by improper means." Minn. Stat. § 325C.01, subd. 3(i) (emphasis added). It defines "improper means" as including "theft" or "breach * * * of a duty to maintain secrecy." *Id*., subd. 2.
>
> The act also provides for injunctive relief against "threatened misappropriation" of trade secrets. Minn. Stat. § 325C.02(a). It defines "misappropriation" alternatively as the "use of a trade secret of another without * * * consent by a person who used improper means to acquire knowledge of the trade secret." Minn. Stat. § 325C.01, subd. 3(ii)(A).
>
> The evidence raises issues of fact as to whether the manual was a "trade secret" and whether it was acquired by "improper means." We need not address RSI's other allegations about misappropriation of confidential information, or its allegation the trial court should have allowed it to supplement its response to Koering's summary judgment motion.
>
> Koering is not entitled to summary judgment on RSI's claims for breach of her duty of loyalty, unfair competition and misappropriation of confidential information.

*Id*. at 306-07.

11

Here, Katch's complaint contains more than sufficient detail to allow the Court to draw a reasonable inference that the identities of publishers and average revenue per query are not generally known, have competitive value to MediaAlpha, and that Katch has undertaken efforts to keep the information confidential. *Id.* (citing *SL Montevideo Tech., Inc.*, 292 F. Supp. 2d at 1178-79.) Similarly, Katch alleges that Defendant knows this information. He therefore does not need access to a flash drive or Katch's electronic or paper documents to use the information. The MUSTA does not require physical theft of a tangible object for a showing of misappropriation.

Accepting the facts of the complaint as true, Defendant will necessarily use the information in his new job to compete against Katch and there is no obvious way for him to perform his responsibilities at MediaAlpha without using this information. Katch has therefore stated a claim that Defendant's very employment by MediaAlpha constitutes a violation of the MUTSA. In short, Katch has given Defendant "fair notice of what the claim is and the grounds upon which it rests" in accordance with the requirements of *Twombly*. 550 U.S. at 555.

### IV. The Analysis is No Different under California Law.

Plaintiff asserts that California law does not apply to the trade secrets claim. See Plaintiff's Reply Memorandum in Support of Its Motion for Preliminary Injunction, pp. 7-9. Even if California law were applicable, Plaintiff's claim for threatened misappropriation is equally viable under California Civil Code Civ. Code § 3426.2(a), which also states that "[a]ctual or threatened misappropriation may be enjoined." *See Cent. Valley Gen. Hosp. v. Smith*, 75 Cal Rptr. 3d 771 (Cal. Ct. App. 2008), stating:

> Civil Code section 3426.2, subdivision (a) provides: "Actual or threatened misappropriation may be enjoined." Based on the unambiguous words of the statute, we reject Hospital Group's argument that California law does not permit injunctive relief to be based on threatened misappropriation of trade secrets. It is well established that the plain and ordinary meaning of the word "or" is "to mark an alternative such as 'either this or that' Therefore, the use of the word "or" in Civil Code section 3426.2, subdivision (a) plainly means that an injunction may be based either on actual misappropriation or on threatened misappropriation. Accordingly, Civil Code section 3426.2, subdivision (a) "explicitly provides for two types of misappropriations— actual and threatened."

*Id*. at 788-89. *See also, Wyndham Resort Development Corp. v. Bingham*, No. 2:10-CV-01556, 2010 U.S. Dist. LEXIS 80268 (E.D. Cal. July 9, 2010) (issuing preliminary injunction under § 3426.2(a) to prevent misappropriation of trade secrets where it was threatened but had not occurred, citing *Cent. Valley Gen. Hosp.*).

Defendant would have the Court believe that formal recognition of the so-called inevitable disclosure doctrine is a critical precondition of Katch's lawsuit. This is not correct, under either California or Minnesota law. Defendant's argument conflates two separate and distinct meanings that practitioners attach to the label of "inevitable disclosure" – the *remedy* and the *allegation*.

Minnesota has never explicitly disallowed relief in the form of a restriction on employment (a court-imposed non-compete) for a threatened misappropriation of trade secret as the court imposed in *Pepsico v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). Even if that *remedy* was not available under Minnesota law, however, which is not the case, a plaintiff may argue under Minnesota law that the very nature of a former employee's former job and intended position with a competitor is such that there is no way he could perform his new job without using confidential information.

13

Even in California, the rejection of a court-imposed non-compete remedy as being antithetical to California Business and Professions Code Section 16600 in *Whyte v. Schlage Lock Co.*, 125 Cal. Rptr 2d 177 (Cal. 2002)[1] does not mean an injunction may not be based on threatened misappropriation under California law. *Cent. Valley Gen. Hosp.* at 788-89. The court in *Central Valley* noted that "If the inevitable disclosure doctrine is regarded merely as one way of showing a threatened misappropriation, it does not follow logically that the rejection of the doctrine means all ways of establishing threatened misappropriation have been rejected [in California]."

The court in *Central Valley* went on to say that a claim of threatened misappropriation can be established under California law by showing the following facts: "(1) trade secrets (2) are held by a defendant (3) who intends to improperly use or disclose some of those trade secrets." *Id*. at 791. Here, Plaintiff alleges circumstantial evidence to show that Defendant, and his new employer, intend to use the trade secrets, namely Defendant was offered a large amount of money to move to MediaAlpha right before Open Enrollment. Compl., ¶ 36.

In sum, although this court decided that a court-imposed non-compete is either not available, or not appropriate, under these circumstances, it still could have issued injunctive relief in another form (under either Minnesota or California law), specifically an order enjoining Defendant from using or disclosing trade secrets or confidential information.

---

[1] Plaintiff's request for injunctive relief preventing Defendant from working in the health insurance vertical for 120 days is premised solely on Count I, threatened misappropriation under the MUTSA.

### V.  Katch Has Sufficiently Pled a Claim for Breach of Contract Under California Law.

Defendant alleges that Katch has only pled "boilerplate" language of a breach of contract under California, and failed to plead that: (1) Katch performed *its* end of the contractual obligation, (2) that Sweetser breached the contract, and (3) failed to provide the contractual term that Sweetser breached. Katch will address each of these accusations in turn.

First, Katch pled that "Defendant was provided with good and adequate consideration for his contractual promises." Compl., ¶ 60. Defendant has not pointed to any California case granting a motion to dismiss based solely upon the above-wording. This factual allegation, taken as true, forms the basis for a viable claim of breach of contract.

Second, Defendant claims that Katch failed to provide the contractual term that it alleges Defendant breached. In its Verified Complaint, Katch reproduced Sections 1.1 and 1.2 of Defendant's Non-Disclosure Agreement ("Agreement") pertaining to Defendant's agreement not to disclose or use any of Katch's Proprietary Information. Compl., ¶¶ 33-34.  Katch quoted these paragraphs in its allegations of breach of contract and attached a copy of the Agreement. Compl., ¶ 59 and Exhibit 1. Again, Defendant cites no California case holding that such a specific reference is insufficient or even that reference to a specific provision of the Agreement is required under federal law. Regardless, Katch, in its detailed complaint, addressed both of the elements Defendant claims it omitted.

Finally, Defendant claims that Katch has not alleged an actual breach of contract. Katch has not, at this time, alleged an actual breach of contract. Katch's Complaint states that:

> 64. By becoming employed with MediaAlpha, Defendant will necessarily breach his covenants and restrictions and, therefore, breach his Agreement by engaging in conduct after his employment with Katch that violates his obligations under his Agreement.
>
> 65. The foregoing conduct of Defendant constitutes a threatened breach of contract.

Compl., ¶¶ 64-65.

Katch filed its Verified Complaint on or about Defendant's first day of employment with MediaAlpha. It alleged anticipatory breach of contract, and requested injunctive relief to prevent harm. Defendant's Agreement provides that Katch may obtain injunctive relief to prevent a breach of the terms of the Agreement. Compl., Exh. 1, Sec. 7. Further, California recognizes a viable claim for anticipatory breach of contract. *See, e.g. Central Valley General Hospital v. Smith*, 75 Cal. Rptr. 3d at 781 ("California law recognizes that a contract may be breached by nonperformance, by repudiation, or a combination of the two"… "[plaintiff] can treat [a] repudiation as an anticipatory breach and *immediately* seek damages for breach of contract.").

Defendant cites only cases relating to the pleading of an actual breach of contract, and does not cite any cases prohibiting a claim for threatened or anticipatory breach of contract. Here, Katch asserts a claim for threatened breach of contract for the purposes of obtaining an injunction to prevent Defendant from harming Katch. Katch has sufficiently pled a detailed and plausible basis for its threatened breach of contract claim.

Contrary to Defendant's argument, and as explained above, Plaintiff's claim for threatened breach of contract in this litigation does not require the implementation of the inevitable disclosure doctrine. Katch has provided a detailed basis for its breach of contract claim and factual allegations to support the relief it requests.

## VI. Defendant is Not Entitled to his Attorneys' Fees Under California Law or Minnesota Law.

Katch filed this lawsuit because of significant and imminent threat to its business posed by Defendant's announced intention to work for a direct competitor in the one job in the world in which he could inflict direct economic harm not with fair competition, but with insider knowledge of Katch's playbook. Katch sincerely believes that Defendant should have been enjoined from using this information in this way, and bases its legal position in part on a fully enforceable non-disclosure agreement which Defendant does not deny signing. Defendant's lawsuit is brought in good faith.

Under Minn. Stat. § 325C.04, an award of attorney's fees to a prevailing party is not mandatory. *Weaver v. Iverson*, No. A12-0354, 2012 Minn. App. Unpub. LEXIS 829 (Minn. Ct. App. Aug. 27, 2012) (denying request for fees). For a defendant to recover fees, it must show "bad faith." Minn. Stat. § 325C.04 (i). In *Gordon Employment, Inc. v. Jewell*, 356 N.W.2d 738 (Minn. Ct. App. 1984), the Court of Appeals affirmed the trial court's refusal to award fees to the defendant where plaintiff admitted not making any efforts to maintain the secrecy of the alleged trade secrets. The court appeals, analyzing the request under Minn. Stat. § 549.21, held that "bringing suit under those conditions is not equivalent to bad faith or oppressive motives under the law." *Id*. at 742.

17

In *Wixon Jewelers, Inc. v. Aurora Jewelry Designs*, No. C0-01-2149, 2002 Minn. App. LEXIS 708 (Minn. Ct. App. June 18, 2002), the Court of Appeals reversed an award of fees under Minn. Stat. § 325C.04 where discovery produced insufficient evidence to support the claim at trial. *Id*. at *6. The Court of Appeals held that there was no suggestion that claim was originally made in bad faith, and even if a "claim" is made continuously under section 325C.04 until it is dismissed, the claim in that case survived summary judgment and an award of fees was improper.

Defendant rests his application for fees exclusively on California law, specifically the California Uniform Trade Secrets Act (CUSTA) despite the fact that Plaintiff has not pled a claim under the CUSTA. For reasons set forth in detail in Plaintiff's Reply Memorandum in Support of its Motion for a Preliminary Injunction, California law does not govern the trade secrets claim in this case. Even if the Court chose to apply California law to the merits of the statutory claim under an expansive reading of the narrow choice of law clause in Defendant's Agreement, it would be improper to apply California law to Plaintiff's request for fees in this case involving a claim under Minnesota law against a Minnesota Defendant in a Minnesota court. And, even if the Court did apply California law, a showing of "bad faith" is required under California Civ. Code § 3426.4, and there is absolutely no support for such a finding in this case. Defendant's request for fees should therefore be denied.

## CONCLUSION

Katch has sufficiently pled claims for which relief can and should be granted. For these reasons and those stated above, Katch respectfully requests that the Court deny Defendant's motion to dismiss.

Dated: November 10, 2015.   JACKSON LEWIS P.C.

*s/V. John Ella*
V. John Ella #249282
Jillian M. Flower #393331
225 South Sixth Street, Suite 3850
Minneapolis, MN  55402
(612) 341-8131
Ellaj@jacksonlewis.com
Jillian.flower@jacksonlewis.com

ATTORNEYS FOR PLAINTIFF KATCH, LLC, F/K/A VANTAGE MEDIA, LLC

4840-8337-9498, v.  1